IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 123,687

STATE OF KANSAS,
*Appellee*,

v.

JOSHUA F. SINNARD,
*Appellant.*

SYLLABUS BY THE COURT

1.

Appellate courts review a district court's decision to grant a continuance under the speedy trial exceptions in K.S.A. 2019 Supp. 22-3402(e) for an abuse of discretion. A district court abuses its discretion if its decision (1) is based on an error of law—if the discretion is guided by an erroneous legal conclusion; (2) is based on an error of fact—if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based; or (3) is arbitrary, fanciful, or unreasonable—if no reasonable person would have taken the view adopted by the trial court. The party claiming error bears the burden to show the district court abused its discretion.

2.

K.S.A. 2019 Supp. 22-3402(e)(4) imposes several conditions on the use of the crowded-docket exception to Kansas' speedy trial statute. First, the district court may order only one continuance based on a crowded docket. Second, the district court must order the continuance within the original speedy trial deadline. Third, the new trial date must be not more than 30 days after the limit otherwise applicable. And fourth, the record

1

must show that other pending cases, rather than secondary matters such as witness availability, prevented the court from setting the trial within the speedy trial deadline.

3.

When a defendant argues the district court abused its discretion by making an error of fact because the record does not support the district court's crowded-docket finding, we review that finding for substantial competent evidence. Substantial competent evidence is such legal and relevant evidence as a reasonable person might regard as sufficient to support a conclusion. An appellate court does not reweigh conflicting evidence, evaluate witness credibility, or determine questions of fact, and the court presumes the district court found all facts necessary to support its judgment.

4.

K.S.A. 2022 Supp. 60-456 provides guidelines for the admissibility of lay and expert opinion testimony. The distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field.

5.

K.S.A. 60-404 directs that a verdict shall not be set aside, or a judgment reversed, based on the erroneous admission of evidence without a timely and specific objection. In other words, the statute is a legislative mandate limiting the authority of Kansas appellate courts to address evidentiary challenges. Thus, much like jurisdictional issues, appellate courts may consider a party's compliance with K.S.A. 60-404 on their own initiative.

6.

Like many evidentiary determinations considered on appeal, an appellate court reviews a trial court's admission or exclusion of hearsay statements for an abuse of

2

discretion. Hearsay is defined as evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated. Out-of-court statements that are not offered to prove the truth of the matter stated are not hearsay under K.S.A. 2022 Supp. 60-460. The theory behind the hearsay rule is that when a statement is offered as evidence of the truth of the matter stated, the credibility of the declarant is the basis for its reliability, and the declarant must therefore be subject to cross-examination.

7.

A jury instruction that omits an essential element of the crime charged is legally erroneous.

Review of the judgment of the Court of Appeals in an unpublished opinion filed October 7, 2022. Appeal from Douglas District Court; JAMES R. MCCABRIA, judge. Oral argument held September 13, 2023. Opinion filed February 16, 2024. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Jon Simpson*, assistant district attorney, argued the cause, and *Suzanne Valdez*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

WALL, J.:  In July 2017, Joshua F. Sinnard arranged to have sex with a 17-year-old in exchange for money. The State charged Sinnard with commercial sexual exploitation of a child. Sinnard's trial began after the speedy trial deadline in K.S.A. 2019 Supp. 22-3402(a). But before that deadline had lapsed, the district court invoked the crowded-docket exception. That exception authorizes the district court to grant a one-time

3

continuance for up to 30 days if the court's docket cannot accommodate another trial setting within the original speedy trial deadline. Sinnard's trial began within 30 days of his original speedy trial deadline.

At trial, the investigating detective testified as a lay witness about the contents of Sinnard's phone records from the day of the incident and explained in general terms how cell phones connect to cell towers. The detective also testified to the contents of Sinnard's phone records during a two-week period before and after the incident, even though those records had not been admitted into evidence. A jury convicted Sinnard as charged. And a panel of the Court of Appeals affirmed. *State v. Sinnard*, No. 123,687, 2022 WL 5287901 (Kan. App. 2022) (unpublished opinion).

Sinnard now challenges the Court of Appeals' judgment on four grounds. First, he argues the district court erred by invoking the crowded-docket exception. But the district court's continuance satisfied the statutory conditions for invoking the exception. Substantial competent evidence supports the district court's crowded-docket finding. And the district court's decision to continue Sinnard's trial was not objectively unreasonable. Thus, Sinnard has failed to show that the district court abused its discretion or that the panel erred by affirming that decision.

Second, Sinnard continues to argue that the detective's lay testimony about how to interpret Sinnard's cell phone call records from the day of the incident and his general explanation about how cell phones connect to cell towers was inadmissible expert opinion testimony. But Sinnard has failed to preserve his challenge to the detective's testimony about the contents of Sinnard's cell phone records. And the detective's comments about cell phone connectivity were not so specialized as to bring them within the realm of expert opinion testimony.

4

Sinnard also contends that the detective's testimony about the contents of Sinnard's unadmitted phone records before and after the incident was inadmissible hearsay that affected the verdict. Granted, the district court erred by admitting this hearsay testimony, but we agree with the panel's conclusion that this error was harmless given the abundance of other evidence corroborating the victim's account of the incident.

Third, Sinnard claims that the jury instruction on commercial sexual exploitation of a child was clearly erroneous. But the elements instruction given to the jury was legally appropriate and included the culpable mental state for that crime. While Sinnard's proposed instruction was also legally appropriate, the instructions given accurately stated the law and were not reasonably likely to confuse the jury.

Finally, Sinnard argues the panel erred by holding that cumulative error did not deprive him of a fair trial. But having found only one harmless error, Sinnard is not entitled to relief under the cumulative error doctrine.

Thus, we affirm the judgment of the Court of Appeals and affirm Sinnard's conviction.

FACTS AND PROCEDURAL BACKGROUND

On July 25, 2017, 17-year-old P.F. went to the Tonganoxie Public Library around noon. While there, she decided that she wanted to go meet a friend at the Legends Outlet Mall in Kansas City. She asked her mom, M.F., if she could go, but M.F. said no. P.F. then started looking for other ways to get there.

P.F. saw a Snapchat from a user named "Wamma Jamma" asking if anyone wanted to make $200. P.F. understood this to mean having sex with someone in exchange for money. P.F. responded to Wamma Jamma's message. P.F. then received a message on

5

Snapchat from another user named "Blu." Blu told P.F. his name was Josh, and he would pick her up at the Tonganoxie Public Library. Police later determined that the Snapchat account using the name "Blu" was associated with Sinnard's phone number and e-mail address. And at trial, P.F. identified Sinnard as the man who picked her up at the library.

When P.F. got into Sinnard's car, they had a short conversation. They agreed Sinnard would take P.F. to his apartment in Lawrence to have sex and then he would drive her to the Legends and pay her on the way there. They left the library around 12:30 p.m. P.F. testified they took the "back way" to Lawrence "on [highways] 24 40" though she could not remember the exact route. During the drive, Sinnard told P.F. he worked at a car dealership.

P.F. was not familiar with Lawrence, so she could not exactly recall the location of Sinnard's apartment. But she remembered going down an "older" one-way street with a lot of stoplights and a lot of trees on both sides. When they arrived at Sinnard's apartment, they again discussed what would happen before going in—they would have sex, and then Sinnard would drive P.F. to the Legends and pay her on the way there.

Sinnard and P.F. spent no more than 30 minutes at Sinnard's apartment. They had sex in Sinnard's bedroom. He then drove P.F. to the Legends, traveling on I-70. On the way, he gave P.F. $200 in $20 bills.

At the Legends, P.F. met up with her friend and they spent the afternoon and evening there. Using the $200 she had just received, P.F. bought some items from Victoria's Secret and some food. A friend of her friend then gave her a ride back to Tonganoxie in exchange for the rest of P.F.'s cash.

When P.F. arrived home, she was carrying a Victoria's Secret bag and a Chipotle bag. Upon seeing the bags, M.F. became suspicious because she knew P.F. had no job

6

and no money. M.F. questioned P.F. about the day's events. Over the next couple days, P.F. explained to her mother that she had spoken with a Snapchat user named Wamma Jamma about getting money and a ride to the Legends. A man named Josh had then picked P.F. up at the Tonganoxie Public Library and driven her to Lawrence where they had sex. Afterward, the man gave her $200 and drove her to the Legends.

At first, P.F. did not want to report the incident to police. But after her father found out what happened, she spoke with Detective Scott Slifer with the Lawrence Police Department. P.F. provided some screenshots of conversations she had with Wamma Jamma both before and after meeting with Sinnard. P.F. also provided Slifer with an image from her phone's Google Maps application, which she believed showed a location near Sinnard's apartment. The screenshot shows the location of the University of Kansas campus with the address for Strong Hall and a pin drop "[s]hortly behind Allen Fieldhouse," and asks, "Were you here?" from "1:04 PM to 1:28 PM" on "July 25, 2017." P.F. did not recall ever being on the University of Kansas campus, but she believed Google Maps simply identified "the nearest most popular [location] that you passed."

P.F. also described Sinnard's apartment to Slifer. She said both Sinnard's bedroom and the rest of the apartment were cluttered, with items like clothes and cups strewn about. She drew a diagram of the layout of the apartment. She also described a sex toy that Sinnard owned. And she said she had made it clear to Sinnard that she was only 17 years old.

Slifer found Sinnard at the car dealership where Sinnard worked. Sinnard provided the address for his apartment on Tennessee Street. His address was "about five blocks east" of Strong Hall. And Tennessee Street happened to be one of the two one-way streets Slifer had thought of when P.F. described the route Sinnard had taken to get to his apartment.

7

Police searched Sinnard's apartment. Photographs of the apartment showed the living room and one of the bedrooms were cluttered. Police found business cards and mail with Sinnard's name in the cluttered bedroom. Police also found a sex toy in that bedroom matching P.F.'s description. And a police diagram of the layout of the apartment matched the diagram P.F. had drawn for Slifer.

During his investigation, Slifer also obtained records for Sinnard's cell phone to determine whether they tracked with P.F.'s version of events. Those records showed the times that particular cell towers serviced Sinnard's phone for incoming and outgoing calls on July 25, 2017. All calls before 12:34 p.m. were serviced by a single cell tower in Baldwin City. An incoming call at 12:34 p.m. (routed to voicemail at 12:35 p.m.) and an outgoing call at 12:36 p.m. were serviced by a cell tower in Tonganoxie. Slifer testified the Tonganoxie tower was about 3.86 miles from the Tonganoxie Public Library "as the crow flies." He also believed the tower was close to I-70.

Sinnard's phone then neither placed nor received any calls until 2:02 p.m. At 2:02 p.m., 2:04 p.m., and 2:27 p.m., calls to and from Sinnard's phone were serviced by a cell tower in Kansas City, Kansas. Slifer, relying on Google, determined that the tower was "about 200 feet south" of the Kansas Speedway "very near the Legends Shopping Center." Calls at 2:36 p.m. and 2:38 p.m. were again serviced by the cell tower in Tonganoxie. All incoming and outgoing calls after 3:51 p.m. were serviced by cell towers in Lawrence.

At trial, the parties stipulated to the admission of the phone records from July 25, 2017. Slifer had also obtained records for the two weeks before July 25 and the two weeks following July 25, but those records were not offered into evidence at trial. Even so, Slifer testified, over Sinnard's hearsay objection, that the only time in that four-week period that Sinnard's phone connected with the Tonganoxie tower was on July 25.

A jury convicted Sinnard of commercial sexual exploitation of a child. The district court sentenced Sinnard to 38 months' imprisonment. Sinnard appealed, raising multiple claims of error. The Court of Appeals affirmed his conviction. *Sinnard*, 2022 WL 5287901.

Sinnard petitioned for review, and we granted all issues raised in his petition. We heard oral argument from the parties on September 13, 2023. Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petition for review of Court of Appeals decision); K.S.A. 60-2101(b) (providing Supreme Court jurisdiction over cases subject to review under K.S.A. 20-3018).

ANALYSIS

I. *The District Court Did Not Abuse Its Discretion by Granting a Continuance of Sinnard's Trial Under the Crowded-Docket Exception*

Sinnard first claims a violation of his statutory speedy trial right. Kansas statute requires the State to bring a criminal defendant to trial within 150 days (if the defendant is in custody) or 180 days (if the defendant makes bond). K.S.A. 2019 Supp. 22-3402(a) and (b). But the statute provides for an extension of that deadline in several circumstances. See K.S.A. 2019 Supp. 22-3402(e). Relevant here, a district court may grant one continuance of not more than 30 days if "because of other cases pending for trial, the court does not have sufficient time to commence the trial of the case within the time fixed for trial by this section." K.S.A. 2019 Supp. 22-3402(e)(4). This is commonly known as the crowded-docket exception.

Here, the district court invoked the crowded-docket exception to move Sinnard's trial outside his original speedy trial deadline. Sinnard argues the district court abused its discretion by invoking the exception. But the panel found that the district court judge

9

balanced all the competing interests in setting its docket and that the court's "discretionary decision . . . should be free from appellate interference." 2022 WL 5287901, at *3.

On review, Sinnard continues to assert his claim of error. To resolve the issue we first highlight additional facts relevant to the analysis. Then, we identify the applicable standard of review and legal framework before analyzing the merits of Sinnard's claim.

A. *Additional Facts Relevant to the Speedy Trial Claim*

On April 22, 2019, Sinnard waived arraignment. Because Sinnard had posted bond, the State was statutorily required to bring Sinnard to trial within 180 days—in this case, by October 19, 2019. See K.S.A. 2019 Supp. 22-3402(b). When setting their dockets, district courts commonly stack several cases for trial on the same date. This practice increases the chances that at least one case will proceed to trial on a given date because cases are often continued or resolved. Here, Sinnard's case was the second setting on July 29, 2019, behind *State v. Ross*, a rape case.

At a motions hearing on July 23, 2019, the State informed the district court judge that Sinnard's trial needed to be moved because *State v. Ross* would likely proceed to trial on July 29. The judge suggested that Sinnard's trial could be set on October 28, November 4, or November 12, though it would have to be another second setting because there were already trials scheduled on each of those dates. The State then informed the judge that Sinnard's speedy trial deadline was October 19. Sinnard offered to waive his speedy trial rights through October 28. To ensure that Sinnard's waiver was made knowingly, the judge offered to look for trial dates available before October 19, if any. But after conferring with defense counsel, Sinnard stood by his original offer and waived his speedy trial rights for 10 days, until October 28. Sinnard's case was the second setting for that day because another case, *State v. Potts*, already occupied the first setting.

10

On July 29, 2019—the day *State v. Ross* was set to go to trial—the district court held a hearing in *State v. Ross* to address the defense's motion for a continuance due to defense counsel's illness. The district court judge suggested October 28, 2019, as a possible trial date. The parties confirmed that October 28 was the only date in 2019 when both counsel and witnesses would be available. The judge scheduled *State v. Ross* as the first setting for October 28. The State later moved for a continuance in Sinnard's case, which was the second setting on that date. It is unclear from the record what happened to *State v. Potts*, which had originally been the first setting on October 28.

At a motions hearing on August 5, 2019, the district court addressed the State's motion to continue Sinnard's trial. The State argued that *State v. Ross* had justifiably been set as the first case on October 28 because that case had been pending longer than Sinnard's case. Rather than continuing Sinnard's trial, the State suggested the court leave Sinnard's case in the second setting on October 28 and look for a backup trial date. Sinnard objected to any continuance of his trial beyond October 28. In exploring backup trial dates, the judge first offered November 4, but the State noted that there was already a trial set for that week. The judge then suggested November 12, and both the State and defense counsel confirmed they were available. The judge also reluctantly offered to move some civil matters scheduled the week of September 30, but neither defense counsel nor the prosecutor were available that week. So the district court reserved November 12 as the backup date.

At a status conference on October 16, 2019, the State informed the court that *State v. Ross* would likely proceed to trial on October 28 and had scheduling priority over Sinnard's case. The district court made a crowded-docket finding and continued Sinnard's trial to November 12. Sinnard asserted his speedy trial rights and objected to the crowded-docket finding.

On November 7, 2019, Sinnard requested a continuance of his trial because defense counsel needed additional time to prepare due to counsel's involvement with a federal jury trial. Sinnard's trial was set for January 21, 2020, and Sinnard waived his speedy trial rights from November 12 until the new trial date. Sinnard's trial began on January 21 as scheduled.

B.   *Standard of Review and Relevant Legal Framework*

"A claimed violation of the statutory right to speedy trial presents an issue of law over which [this court] ha[s] unlimited review." *State v. Brown*, 283 Kan. 658, 661, 157 P.3d 624 (2007). And to the extent this issue requires the court to engage in statutory interpretation, that also presents a question of law subject to unlimited review. *State v. Eckert*, 317 Kan. 21, 27, 522 P.3d 796 (2023).

But a district court's decision to grant a continuance under K.S.A. 2019 Supp. 22-3402(e) is reviewed for an abuse of discretion. *State v. Robinson*, 306 Kan. 1012, 1017-18, 399 P.3d 194 (2017). A district court abuses its discretion if its decision (1) is based on an error of law—if the discretion is guided by an erroneous legal conclusion; (2) is based on an error of fact—if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based; or (3) is arbitrary, fanciful, or unreasonable—if no reasonable person would have taken the view adopted by the trial court. *State v. Green*, 315 Kan. 178, 179-80, 505 P.3d 377 (2022). As the party claiming error, Sinnard bears the burden to show the district court abused its discretion. *Robinson*, 306 Kan. at 1018.

Kansas' speedy trial statute requires that a defendant held to answer on an appearance bond must be brought to trial within 180 days after arraignment, and if not, the defendant must be discharged from any further liability for the crime charged. K.S.A. 2019 Supp. 22-3402(b). But recognizing the realities of litigation, the statute provides

12

for an extension of that deadline in several circumstances. See K.S.A. 2019 Supp. 22-3402(e). Relevant here, the crowded-docket exception permits a district court to grant one continuance of not more than 30 days if "because of other cases pending for trial, the court does not have sufficient time to commence the trial of the case within the time fixed for trial by this section." K.S.A. 2019 Supp. 22-3402(e)(4).

Sinnard waived his speedy trial rights from October 19, 2019, to October 28, 2019, and again from November 12, 2019, until January 21, 2020. So Sinnard's issue focuses on the 16 days, between October 28 and November 12—the period in which he did not waive his speedy trial rights. We must determine whether an exception applies to those 16 days. If not, the statute compels us to release Sinnard from prison and dismiss his charges. See *State v. Queen*, 313 Kan. 12, 29, 482 P.3d 1117 (2021) (dismissal of charges is only possible remedy for violating defendant's speedy trial right).

C. *The District Court Did Not Abuse Its Discretion by Invoking the Crowded-Docket Exception*

Sinnard contends that the district court abused its discretion on five different grounds. First, he argues the court made an error of law by invoking the crowded-docket exception because the exception should not apply to the circumstances of his case. Second, he argues the court made an error of law by misinterpreting the relevant statutory language. Third, he argues the court made an error of law by failing to make fact-findings with sufficient particularity. Fourth, he argues the court made an error of fact because the record does not support its crowded-docket finding. And fifth, he argues the court's decision to invoke the crowded-docket exception and continue his case was unreasonable. We address these arguments in turn.

1. *The District Court Did Not Err by Applying the Crowded-Docket Exception to the Circumstances of This Case*

First, Sinnard argues the crowded-docket exception simply does not apply in situations like his. Under Sinnard's view, the district court would have been authorized to invoke the crowded-docket exception only if the case originally scheduled for the first setting, *State v. Potts*, had proceeded to trial on October 28, 2019. If not, Sinnard argues the district court could not rely on the crowded-docket exception to continue his trial and schedule yet another matter, *State v. Ross*, for the first setting on October 28. In other words, once his trial was scheduled for the second setting on October 28, 2019, Sinnard believes he had a vested right to automatically move into the first setting when *State v. Potts* did not proceed to trial that day.

But the plain language of K.S.A. 2019 Supp. 22-3402(e)(4) does not support Sinnard's argument. See *Bruce v. Kelly*, 316 Kan. 218, 224, 514 P.3d 1007 (2022) (in interpreting statutes, courts first look to statute's plain language). The statute provides, in relevant part:

> "(b) If any person charged with a crime and held to answer on an appearance bond shall not be brought to trial within 180 days after arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant, or a continuance shall be ordered by the court under subsection (e).
>
> . . . .
>
> "(e) For those situations not otherwise covered by subsection (a), (b) or (c), the time for trial may be extended for any of the following reasons:
>
> . . . .

(4) because of other cases pending for trial, the court does not have sufficient time to commence the trial of the case within the time fixed for trial by this section. Not more than one continuance of not more than 30 days may be ordered upon this ground." K.S.A. 2019 Supp. 22-3402(b), (e)(4).

The plain language of the statute places no limit on the district court's ability to prioritize trial settings on a given day. See *State v. Young*, 313 Kan. 724, 728, 490 P.3d 1183 (2021) (when statute's language is unambiguous, courts do not add or ignore words). Nor does the language grant the defendant a vested right to have his or her case move into the first trial setting if the original first setting does not proceed to trial.

Instead, we have observed that the statute creates four conditions or limitations on the crowded-docket exception. First, the district court may order only one continuance based on a crowded docket. K.S.A. 2019 Supp. 22-3402(e)(4); *Queen*, 313 Kan. at 15 (statute "allows for a one-time, 30-day continuance"). Second, the district court must order the continuance within the original speedy trial deadline. *State v. Cox*, 215 Kan. 803, 805, 528 P.2d 1226 (1974). Third, the new trial date must not be "'more than thirty days after the limit otherwise applicable.'" *State v. Coburn*, 220 Kan. 750, 753, 556 P.2d 382 (1976). And fourth, the record must show that other pending cases, rather than secondary matters such as witness availability, prevented the court from setting the trial within the speedy trial deadline. See *Queen*, 313 Kan. at 22 (record did not support crowded-docket finding when trial set outside of speedy trial deadline because of difficulty securing witnesses at an earlier date); see also *State v. Edwards*, 291 Kan. 532, 543, 243 P.3d 683 (2010) (noting State presented no evidence to show other pending cases prevented district court from commencing defendant's trial within statutory speedy trial deadline).

The district court's continuance of Sinnard's trial satisfied all four statutory conditions. On October 16, 2019, the district court ordered a single continuance. The

court ordered that continuance before both Sinnard's original speedy trial deadline of October 19, 2019, and the date to which he waived his speedy trial rights, October 28, 2019. The new trial date was set within 30 days of both October 19 and October 28. And the record shows the district court continued Sinnard's trial because of other pending cases and not because of secondary concerns like the availability of counsel or witnesses. Thus, the crowded-docket exception applied to the circumstances of Sinnard's case.

2. *The District Court Did Not Base Its Decision on an Erroneous Legal Conclusion*

Sinnard next argues the district court erroneously interpreted K.S.A. 2019 Supp. 22-3204(e)(4). Sinnard bases his argument on comments the district court judge made at the August 5 hearing. There, the judge explained he did not make a crowded-docket finding at the July 23 hearing (during which Sinnard's trial was scheduled for October 28) because Sinnard waived his speedy trial rights up to October 28. The judge added: "Had he not waived speedy trial, I may have had to make a [crowded-docket] finding at that time, and I'm not sure I read the—I think as long as I am within the 30 days, I can move [the trial] as necessary."

Sinnard argues the district court judge erred by concluding that K.S.A. 2019 Supp. 22-3402(e)(4) permitted the judge to move Sinnard's trial "as necessary" because the statute permits only one continuance. But here, the judge ordered only one continuance based on the crowded-docket exception. So, even assuming Sinnard's interpretation of the judge's comments are accurate, the district court did not act on any erroneous legal conclusion. See *Green*, 315 Kan. at 180 (district court abuses its discretion if discretion is guided by erroneous legal conclusion). Thus, Sinnard has failed to show that the district court abused its discretion on this basis.

16

### 3.   *The District Court's Fact-Findings Were Not Legally Inadequate*

Sinnard also argues that the district court's crowded-docket finding lacked the requisite specificity. He claims the court needed to explicitly find on the record that it lacked sufficient time to commence Sinnard's trial before the statutory speedy trial deadline and that the reason it did not have sufficient time was because of other cases pending for trial.

Sinnard cites K.S.A. 2019 Supp. 22-3402(e)(4) for support of this proposition. But the plain language of that subsection does not require the district court to make any specific findings on the record when invoking the crowded-docket exception.

And while the district court did not use the precise language Sinnard believes to be required, the court did make findings sufficient to establish that it could not commence Sinnard's trial within the speedy trial deadline due to other pending cases. At the July 23 hearing, the judge walked through the many trials scheduled in the weeks to come and stated, "I think there's ample basis for the Court to make a crowded-docket finding if I have to go out past October 28." At the August 5 hearing, the judge again stated, "[M]y docket is very crowded." And on October 16, 2019, when the judge invoked the crowded-docket exception, he stated, "I don't have any other options" than to continue the trial to November 12.

Kansas appellate courts have consistently affirmed similar findings. See *State v. Rodriguez-Garcia*, 27 Kan. App. 2d 439, 441, 8 P.3d 3 (1999) (district court's statement "'I don't have anything open until November 17, 1997'" sufficient without more to establish court's docket would not accommodate trial before November 17); *State v. Bennett*, No. 117,800, 2018 WL 1770447, at *3 (Kan. App. 2018) (unpublished opinion) (The district court's statement that "'there's just no possibility of scheduling the case earlier. This is the first date I've got available for a first setting'" is sufficient finding for

17

crowded-docket exception.); *State v. Parrish*, No. 110,568, 2015 WL 967546, at *6 (Kan. App. 2015) (unpublished opinion) (district court's statement "'I will make a 30-day finding as well, if it's close to being within that time frame, because my calendar is a mess trying to find dates'" established earlier trial date was unavailable).

The district court made findings sufficient to establish that it could not commence Sinnard's trial within the speedy trial deadline due to other pending cases. Sinnard's argument fails to establish that the district court abused its discretion.

4. *The Record Supports the District Court's Crowded-Docket Finding*

Next, Sinnard argues the district court abused its discretion by making an error of fact because the record does not support the district court's crowded-docket finding. In assessing this type of challenge, we review a district court's crowded-docket finding for substantial competent evidence. *Queen*, 313 Kan. at 20. Substantial competent evidence is "'such legal and relevant evidence as a reasonable person might regard as sufficient to support a conclusion.'" *State v. Shockley*, 314 Kan. 46, 53, 494 P.3d 832 (2021). "An appellate court does not reweigh conflicting evidence, evaluate witness credibility, or determine questions of fact, and the court presumes the district court found all facts necessary to support its judgment." 314 Kan. at 53.

In making his argument, Sinnard focuses on the time between his original trial setting (July 29, 2019) and the statutory speedy trial deadline (October 19, 2019). He highlights that at the July 23 hearing, the district court indicated there might be availability for Sinnard's trial the weeks of August 19 and September 3. Because the district court might have been able to accommodate his trial before October 19, 2019, Sinnard claims the record does not support the district court's crowded-docket finding.

18

But Sinnard's argument ignores the circumstances of his case. At the July 23 hearing, the parties agreed to set Sinnard's case as the second setting on October 28, 2019. The State then pointed out that Sinnard's statutory speedy trial deadline was October 19. The district court offered to look for earlier dates, but Sinnard agreed to waive his speedy trial rights until October 28. Only then did the district court state that it was unlikely that it could accommodate Sinnard's trial before October 28 in any event:

> "Alright. I said I would look for other dates, but the record should reflect that starting next week, I have a week-long rape trial. I have jury trials stacked the next week. Potentially—no, I can't, because Mr. Rosebud is the next week after that. Potentially, I could suggest August 19th. Then I have trial the week after that. I have a week in between those trials and then what starts is a three-week jury trial. My point is, I think there's ample basis for the Court to make a crowded docket finding if I have to go out past October 28."

Sinnard claims that these comments suggest the court might have had possible availability the weeks of August 19 and September 3. But rather than inquiring about a trial setting on those dates, Sinnard agreed to a second setting on October 28 and waived his speedy trial rights up to that date. In other words, Sinnard invited the district court not to set his trial before October 28, 2019.

The record also establishes that on the day the district court ordered the continuance—October 16, 2019—the earliest available date after October 28 for Sinnard's trial was November 12. *Ross* was set for trial the week of October 28, and another case was set for trial the week of November 4. The district court also stated on the record that it had no other option but to continue Sinnard's trial to November 12. Based on this evidence, a reasonable person could infer that on the day the district court ordered the continuance, the earliest available date to set Sinnard's trial was November 12. See *Shockley*, 314 Kan. at 53.

19

Thus, the district court's crowded-docket finding is supported by substantial competent evidence. And Sinnard has failed to show the district court abused its discretion by making any error of fact.

5.   *The District Court's Decision to Grant a Continuance Based on the Crowded-Docket Exception Was Not Unreasonable*

Finally, Sinnard argues no reasonable person would have set *State v. Ross* as the first setting on October 28, 2019, and continued Sinnard's case because Ross was willing to waive his speedy trial rights for as long as needed to ensure his attorneys could be present at his trial. But as the panel observed, "[t]his argument ignores the fact that there are other people involved in a jury trial of that type—the victims, other witnesses, the trial attorneys, and court personnel. A trial judge setting trials must take all of those interests into account when setting the docket." *Sinnard*, 2022 WL 5287901, at *3.

The crowded-docket exception "was designed to accommodate the conflicting demands of speedy justice and crowded court calendars," *Coburn*, 220 Kan. at 753. Here, the district court reasonably balanced those interests. The district court explained that *State v. Ross* involved "a high-level felony" and had been continued twice. The record also indicates that *State v. Ross* had been pending longer than Sinnard's case. The district court also noted that continuing *State v. Ross* would be especially difficult on the victim in that case. And given witness availability, the court explained that the first date after October 28 on which *State v. Ross* could be set for trial was February 10, 2020.

We also disagree with Sinnard's contention that the record shows no consideration for his speedy trial rights. Although the continuance of Sinnard's case pushed his trial past the date to which he had waived those rights (October 28), the district court rescheduled his trial for November 12, within 30 days of his original speedy trial deadline (October 19). While it is possible another district court judge may have balanced these

20

interests differently, the record does not show that the judge's decision to move *State v. Ross* to October 28 and invoke the crowded-docket exception to continue Sinnard's trial was "arbitrary, fanciful, or unreasonable." *Green*, 315 Kan. at 180.

In sum, Sinnard has not met his burden to show that the district court abused its discretion by continuing his trial under the crowded-docket exception. The district court's continuance satisfied the statutory conditions for invoking the exception. The court's crowded-docket finding is supported by substantial competent evidence, and a reasonable person could agree with the court's decision to continue Sinnard's trial.

II. *The District Court Did Not Err by Allowing Detective Slifer to Testify as a Lay Witness and Any Error in Admitting Slifer's Testimony About the Contents of Phone Records Not Admitted into Evidence Was Harmless Error*

Sinnard next raises two types of evidentiary challenges to Detective Slifer's testimony. First, Sinnard argues the district court erred by allowing Slifer to testify as a lay witness regarding how to interpret call records from Sinnard's cellular provider and how cell towers generally connect to cell phones. Sinnard asserts Slifer's testimony on these subjects included specialized knowledge that could only have been provided by a qualified expert. See K.S.A. 2022 Supp. 60-456(a). Second, Sinnard argues Slifer's testimony about the four weeks of phone records not admitted into evidence was hearsay, and the State failed to lay an adequate foundation for the hearsay exception for business records under K.S.A. 2019 Supp. 60-460(m).

As to Sinnard's expert opinion challenge, the panel rejected Sinnard's argument that Slifer's testimony crossed into expert opinion territory. The panel reasoned that Slifer gave a "nontechnical explanation of commonly understood cell phone technology" when he testified that cell phones generally connect to the closest cell tower. *Sinnard*, 2022 WL

5287901, at *5. The panel also explained that Slifer did not try to pinpoint the location of Sinnard's phone, and "[a] lay person reading the [admitted] call detail report and the accompanying guide" could do what Slifer did. 2022 WL 5287901, at *5.

As to Sinnard's hearsay challenge, the panel agreed that Detective Slifer's testimony about the contents of phone records not admitted into evidence was hearsay and the State failed to lay an adequate foundation for admitting that testimony under the business records exception in K.S.A. 2021 Supp. 60-460(n). 2022 WL 5287901, at *6. Still, the panel held that the admission of that evidence was harmless error. 2022 WL 5287901, at *7.

On review, Sinnard argues the panel erred by characterizing Slifer's testimony as lay opinion. And while Sinnard agrees with the panel's holding regarding the erroneous admission of Slifer's hearsay testimony, he argues that the admission of this evidence affected the verdict. We review the expert opinion and hearsay challenges in turn.

A.  *The District Court Did Not Abuse Its Discretion by Allowing Detective Slifer to Testify as a Lay Witness*

To assess Sinnard's claim that Slifer improperly offered expert opinion testimony, we first identify the applicable legal framework. Then, we examine the content of Detective Slifer's testimony and the contemporaneous objections the defense lodged against it. This will confirm which evidentiary challenges to Slifer's opinion testimony are properly before our court. Finally, we review the merits of those expert opinion objections that Sinnard properly preserved for appellate review.

1.  *Standard of Review and Relevant Legal Framework*

Any witness who testifies on a "relevant or material matter" must show they "ha[ve] personal knowledge thereof, or experience, training or education if such be

22

required." K.S.A. 60-419. Kansas law also permits a witness to testify in the form of opinions or inferences when certain conditions are met. Such testimony is generally divided into two categories—lay and expert opinion testimony.

K.S.A. 2022 Supp. 60-456(a) and (b) provide the guidelines for the admissibility of lay and expert opinion testimony:

"(a) If the witness is not testifying as an expert, the testimony in the form of opinions or inferences is limited to such opinions or inferences as the judge finds: (1) Are rationally based on the perception of the witness; (2) are helpful to a clearer understanding of the testimony of the witness; and (3) are not based on scientific, technical or other specialized knowledge within the scope of subsection (b).

"(b) If scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue, a witness who is qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise if: (1) The testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has reliably applied the principles and methods to the facts of the case."

"The distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *United States v. Yeley-Davis*, 632 F.3d 673, 684 (10th Cir. 2011) (citing and quoting Fed. R. Evid. 701 advisory committee notes [2000 amend.]).

"'Whether a witness, expert or layman, is qualified to testify as to his or her opinion is to be determined by the trial court in the exercise of its discretion.'" *State v. Timley*, 311 Kan. 944, 952, 469 P.3d 54 (2020).

23

## 2. *Sinnard Did Not Preserve All His Objections to Detective Slifer's Purported Expert Opinion Testimony*

Before discussing the merits of Sinnard's challenge to Detective Slifer's purported expert opinion testimony, we must confirm what opinion testimony drew a contemporaneous objection from the defense in compliance with K.S.A. 60-404. Just before Detective Slifer testified at trial, Sinnard moved for an order to exclude any testimony about cell phone technology. Sinnard argued that any testimony about how cell phones connect with cell towers or why cell phones would connect with certain towers over others was expert testimony and the State had not designated Slifer as an expert under K.S.A. 2019 Supp. 22-3212.

In response to the motion, the prosecutor said that Slifer would not be offering any expert testimony. Instead, she believed Slifer would testify about the contents of Sinnard's phone records, specifically what cell towers serviced certain calls. The prosecutor added that Slifer would offer no opinion on the exact location of Sinnard's phone at the time calls were made or received, other than to say cell phones generally connect to the nearest cell phone tower.

The district court ruled that Slifer could testify as a lay witness, provided he testified only that cell phones generally connect to the nearest cell tower because that knowledge was not so specialized as to qualify as expert testimony. The court added that Sinnard was free to renew his objection if Slifer's testimony crossed into expert territory.

When he took the stand, Slifer first discussed his experience with law enforcement working with electronic devices and phone records. Then, without objection from the defense, Slifer testified that cell phone service providers keep records of the dates and times of customers' calls and text messages as well as the location of the towers that

24

serviced those calls and messages. He also explained that cell phones generally connect to the cell tower with the strongest signal, and the closest tower usually has the strongest signal unless there is interference or a high volume of cell phone usage in the area.

Slifer then discussed three exhibits that he had obtained from Sinnard's cell phone service provider. One exhibit was a spreadsheet listing the calls made from or received by Sinnard's phone on July 25, 2017; the times of those calls; and the addresses of the cell phone towers that serviced those calls. Another exhibit was a guide explaining how to read the phone records. And the final exhibit showed account details for the phone and identified Sinnard as the subscriber. The parties stipulated to the admission of all three exhibits.

Detective Slifer explained the type of information that was contained in the phone records and how the records were created. He also described the contents of the call records from July 25, 2017. And he compared the location of the cell towers that had serviced Sinnard's calls with the locations P.F. said she and Sinnard had traveled to on the day of the incident. Sinnard did not object that any of this testimony constituted improper expert opinion.

At one point while Detective Slifer was describing the contents of the records, the prosecutor asked Slifer to revisit his earlier testimony about the factors that influence connections to cell towers. The question drew an objection on grounds of improper expert opinion from defense counsel. The district court overruled the objection. Slifer once again testified that cell phones generally connect to the nearest cell tower:

> "[A]ll other things being equal, your cell phone will try to connect to the tower that it has
> the strongest signal from, and the biggest variable in that is almost always distance. It
> tries to connect to the closest tower. There would be obviously exceptions . . . but in
> general, in a flat place, it will connect to the closest tower."

25

As noted, Sinnard argued to the Court of Appeals that Slifer offered improper expert opinion testimony on two subject-matter categories: (1) how cell towers generally connect to cell phones; and (2) how to interpret call records from Sinnard's cellular provider. The State argued that Sinnard had contemporaneously objected to testimony falling into only the first category—how cell towers connect to cell phones. And by failing to lodge a timely and specific objection to any other opinion testimony, as required under K.S.A. 60-404, the State believed Sinnard had failed to preserve his objection to Slifer's opinion testimony on the second category—how to interpret call records. The panel did not address the State's statutory preservation argument. Instead, it reached the merits, concluding all Slifer's challenged testimony was proper lay opinion.

In his petition for review, Sinnard again challenged both subject-matter categories of Slifer's opinion testimony. But the State did not renew its preservation argument under K.S.A. 60-404 in a cross-petition or conditional cross-petition. Generally, we do not consider issues not presented or fairly included in a cross-petition or conditional cross-petition, although we retain authority to address a plain error not presented. See Supreme Court Rule 8.03(b)(6)(C)(i) (2023 Kan. S. Ct. R. at 56.) Thus, one might argue that the State's failure to renew its K.S.A. 60-404 preservation argument in a cross-petition or conditional cross-petition precludes our review of that argument.

But a K.S.A. 60-404 preservation argument is a different animal. K.S.A. 60-404 "directs that a verdict 'shall not' be set aside, or a judgment reversed, based on the erroneous admission of evidence without a contemporaneous trial objection." *State v. Scheetz*, 318 Kan. ___, ___, 541 P.3d 79, 83 (2024). In other words, the statute is a legislative mandate limiting the authority of Kansas appellate courts to address evidentiary challenges. Thus, much like jurisdictional issues, appellate courts may consider a party's compliance with K.S.A. 60-404 on their own initiative.

One might also assume that if an appellate court concludes an evidentiary challenge loses on its merits, any question of whether the challenge was properly preserved under K.S.A. 60-404 would be inconsequential. But K.S.A. 60-404 permits only one outcome regarding unpreserved evidentiary challenges: that the challenge will not be the basis for setting aside the verdict or reversing the judgment. Thus, for an appellate court to go beyond this pronouncement and consider the merits of the unpreserved challenge—even to conclude no error occurred—would be akin to an advisory opinion. And "Kansas courts do not render advisory opinions." *Sierra Club v. Stanek*, 317 Kan. 358, 361, 529 P.3d 1271 (2023).

For these reasons, we must determine whether Sinnard complied with K.S.A. 60-404 as to Slifer's opinions on both subject-matter categories: (1) how cell phones generally connect to cell towers; and (2) how to interpret the call records. As for the first category, Sinnard argues some of Detective Slifer's explanations regarding the contents of the records—such as the meanings of certain acronyms—exceeded the permissible scope of lay testimony. But Sinnard did not object on these grounds at trial. See K.S.A. 60-404; *State v. Dukes*, 290 Kan. 485, 488, 231 P.3d 558 (2010) ("The contemporaneous objection rule requires each party to make a specific and timely objection at trial in order to preserve evidentiary issues for appeal."). So, that evidentiary challenge is not preserved for our review, and we do not reach the merits of that challenge.

As for the second category, Sinnard argues Detective Slifer's testimony regarding cell tower connectivity to cell phones required specialized training and experience, and thus the district court erred in allowing Slifer to provide lay testimony on this topic. As noted, Sinnard moved to exclude this testimony before Slifer took the stand and later renewed his objection during Slifer's testimony on this topic. These actions complied with K.S.A. 60-404, and we have authority to review this issue on the merits.

27

### 3. *Detective Slifer Provided Appropriate Lay Opinion Testimony*

The relevant inquiry here is whether the district court abused its discretion by concluding that Detective Slifer's testimony was not so specialized as to be beyond a lay person's ken and was thus admissible under K.S.A. 2019 Supp. 60-456(a).

Sinnard claims the panel's holding that Detective Slifer need not have been qualified as an expert to discuss how cell phones generally connect with cell towers conflicts with our decision in *Timley*. There, we held the district court did not abuse its discretion by allowing a detective to provide lay testimony regarding the contents of cell phone records, including the time a call was placed and the location of the cell tower that serviced the call. *Timley*, 311 Kan. at 953-54. But the detective in *Timley* did not testify regarding cell phone connectivity with cell towers, so that issue was not before us then. Nor did we express any opinion in *Timley* on whether a lay witness could provide only the same type of testimony as the detective in that case.

While we did not address the issue in *Timley*, other jurisdictions have found that general testimony about how cell phone towers function—including the typical range of cell towers, that cell phones typically connect to the nearest tower, and factors affecting connectivity—does not rely on specialized knowledge falling only within the purview of an expert witness. See, e.g., *United States v. Batista*, 558 Fed. Appx. 874, 876 (11th Cir. 2014) (unpublished opinion) (records custodians could testify as lay witness that cell phones connect to cell towers and phones generally connect to the tower with the closest, strongest signal, adding "[i]t is common knowledge that cell phones connect wirelessly to a nearby cell phone tower"); *United States v. Kale*, 445 Fed. Appx. 482, 485 (3d Cir. 2011) (unpublished opinion) (witness' limited discussion of operation of cell phone towers did not require any "'scientific, technical, or other specialized knowledge'" and "[a] person of average intelligence would almost certainly understand that the strength of one's cell phone reception depends largely on one's proximity to a cell phone tower"). But

see *United States v. Natal*, 849 F.3d 530, 536-37 (2d Cir. 2017) (Sprint employee's testimony regarding how cell phone towers operate was expert testimony). And because K.S.A. 2022 Supp. 60-456 is substantively identical to the federal rules of evidence governing lay and expert opinion testimony, federal caselaw interpreting those provisions is persuasive. *State v. Lyman*, 311 Kan. 1, 21, 455 P.3d 393 (2020); *State v. Sasser*, 305 Kan. 1231, 1244-45, 391 P.3d 698 (2017).

Indeed, in a case involving testimony like Slifer's, the Fourth Circuit held that a witness need not be qualified as an expert to testify about cell tower function. *United States v. Graham*, 796 F.3d 332 (4th Cir. 2015), *rev'd on other grounds on reh'g* 824 F.3d 421 (4th Cir. 2016). In *Graham*, a Sprint records custodian testified that cell phones connect to the cell tower emitting the strongest signal, and that along with proximity, factors such as line of sight and volume of call traffic may affect the ability of a phone to connect to a certain cell tower. The Fourth Circuit held that the witness' testimony did not "rise to the level of an expert opinion" because the witness "did not . . . engage in any analysis comparing the factors or seek to determine how these factors resulted in any particular connection, which would have required scientific, technical, or specialized knowledge." 796 F.3d at 365. Instead, the witness "merely presented the fact that these factors exist, which prevented the jury from being misled into believing that signal strength is a matter of proximity alone or that a cell phone will always connect to the nearest tower." 796 F.3d at 365.

On the other hand, the Tenth Circuit has held that an agent's testimony "concerning how cell phone towers operate constituted expert testimony because it involved specialized knowledge not readily accessible to any ordinary person." *Yeley-Davis*, 632 F.3d at 684. In *Yeley-Davis*, the agent made a chart of phone calls made between the defendant and a coconspirator, but a third phone number was included in the

chart. The agent explained the third number was the coconspirator's number because when a person travels outside "[their] assigned area" the cell tower will assign a new phone number for "switching purposes to get to [their] phone." 632 F.3d at 683-84.

But a closer examination of *Yeley-Davis* reveals that it is distinguishable. In *Yeley-Davis*, the agent applied his specialized knowledge about cell tower operation to the evidence and drew a conclusion about a discrepancy in the phone records at issue in those proceedings. See also *State v. Patton*, 419 S.W.3d 125, 132 (Mo. Ct. App. 2013) ("analysis of the many variables that influence cell site signal strength," which was probative of whether the defendant was closer to one of two towers with overlapping coverage, amounts to expert opinion testimony). But here, Slifer provided only general testimony about the factors that affect cell phone connectivity. He did not apply that knowledge to the evidence in the case to provide an opinion on the location of Sinnard's phone at the time certain calls were made or to explain how connectivity factors resulted in a connection to a particular cell tower. See *State v. Blurton*, 484 S.W.3d 758, 772 (Mo. 2016) (lay witness testimony based on cell phone records did not cross line into expert witness territory because witness did not "attempt[] to pinpoint the defendants' exact location within a small geographic area"). In fact, the Tenth Circuit later distinguished *Yeley-Davis* on similar grounds. See *United States v. Henderson*, 564 Fed. Appx. 352, 364 (10th Cir. 2014) (unpublished opinion) (distinguishing *Yeley-Davis* because there was no discrepancy in Henderson's phone records needing expert clarification and opinion testimony focused on location of cell towers to which phone connected).

We agree with those jurisdictions that have found that a lay witness may provide general information about how cell towers function. Such lay testimony is proper so long as the witness does not rely on such information to support a more technical opinion regarding topics such as the location of a cell phone at a particular time, an explanation as to why a cell phone connected to a specific cell tower over another, or an explanation of apparent discrepancies in call records. Slifer's testimony fits comfortably within this rule.

He identified proximity as the primary factor influencing a cell phone's connection to a cell tower. He also acknowledged cell phone connectivity is subject to other variables. But he did not explain the science behind cell phone connectivity in technical detail. Nor did he try to pinpoint the location of Sinnard's cell phone at any given time. See *Timley*, 311 Kan. at 953-54 (finding detective's lay testimony properly admitted, in part, because he "did not definitively represent that [the defendant] *was* present at any given point at any given time").

For these reasons, Sinnard has failed to show that the district court abused its discretion by allowing Slifer to testify as a lay witness. And we affirm the Court of Appeals' judgment on this point.

B. *The District Court Erred by Admitting Detective Slifer's Testimony About the Contents of Phone Records Not Admitted into Evidence but the Error Is Harmless*

In addition to the opinion testimony discussed above, Detective Slifer also testified that he had reviewed Sinnard's phone records for the two weeks before and the two weeks after July 25, 2017. Slifer explained that he typically requests four weeks of cell phone data so he can identify a pattern of usage for a particular subscriber and determine whether any phone activity deviated from that pattern. The phone records for that four-week period were not admitted into evidence. Even so, the State asked Slifer if he saw a pattern of Sinnard's cell phone connecting with the cell tower in Tonganoxie during that period.

Sinnard objected to the question on hearsay grounds, satisfying the contemporaneous objection rule in K.S.A. 60-404. But the district court overruled the objection. Slifer then said: "The only time the cell phone used any towers in Tonganoxie,

31

Kansas, were on July 25th, 2017. It did it five times, and those are the five times that you see in Exhibit 5. It is the only time in that four-week period it used those towers in Tonganoxie."

On appeal, Sinnard argued that the district court erred by overruling his objection and admitting Slifer's testimony. The panel agreed, reasoning that Slifer's testimony about the unadmitted cell phone records was hearsay. *Sinnard*, 2022 WL 5287901, at *6. But it concluded that this error was harmless.

On review to our court, Sinnard agrees with the panel's admissibility analysis but contends that the erroneous admission of Slifer's testimony impacted the verdict. The State contends that the testimony was not hearsay at all.

### 1. *Standard of Review and Legal Framework*

"Like many evidentiary determinations considered on appeal, an appellate court reviews a trial court's admission or exclusion of hearsay statements for an abuse of discretion." *State v. Race*, 293 Kan. 69, 75, 259 P.3d 707 (2011).

Hearsay is defined as "[e]vidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated." K.S.A. 2022 Supp. 60-460. "Out-of-court statements that are not offered to prove the truth of the matter stated are not hearsay under K.S.A. 60-460." 293 Kan. at 76. "'The theory behind the hearsay rule is that when a statement is offered as evidence of the truth of the matter stated, the credibility of the declarant is the basis for its reliability, and the declarant must therefore be subject to cross-examination.'" 293 Kan. at 76.

32

## 2. *The Detective's Testimony Was Inadmissible but Not Prejudicial*

The four weeks of phone records constituted out-of-court statements because the State did not admit those records into evidence. And Detective Slifer's testimony about the content of those records was offered to prove that Sinnard's phone had not connected with the Tonganoxie tower on any day other than July 25, 2017. Thus, Slifer's testimony about the content of those records should not have been admitted at trial unless an exception to the hearsay rule applied. See K.S.A. 2022 Supp. 60-460.

Rather than argue that a hearsay exception applied, the State argues the testimony was not hearsay at all. The State cites *State v. Randle*, 311 Kan. 468, 477, 462 P.3d 624 (2020), which held, "A statement is not hearsay if it is 'used circumstantially as giving rise to an indirect inference but not as an assertion to prove the matter asserted.'" The State argues Slifer's testimony was offered to support the inference that Sinnard's phone did not connect to any towers other than the towers specified in those records. But that is a direct inference from the unadmitted phone records (the out-of-court statements), and it was clearly offered to prove the truth of the matter asserted—that Sinnard's phone did not connect with the Tonganoxie tower on any day other than July 25, 2017. Thus, *Randle* is inapposite.

The State also argues the records were computer-generated and thus non-hearsay. The State relies on *State v. Everette*, No. 115,645, 2018 WL 4517575 (Kan. App. 2018) (unpublished opinion), where a panel of the Court of Appeals distinguished computer-*stored* information from computer-*generated* information. The panel held the former is hearsay while the latter is not. 2018 WL 4517575, at *7. But the State did not establish at trial that the call records were entirely computer-generated. See 2018 WL 4517575, at *7 (defendant produced no evidence that call logs were entirely computer-generated, thus no

foundation to admit call logs as nonhearsay-computer-generated records). So even if the rule in *Everette* controlled, the State failed to establish a foundation for admission of the challenged records under that rule.

Further, as we noted, the purpose of the hearsay rule is to ensure the credibility of declarants when their out-of-court statements are offered for the proof of the matter asserted. *State v. Cosby*, 293 Kan. 121, 127, 262 P.3d 285 (2011). Courts have reasoned that out-of-court statements that are auto-generated by a machine do not present the same credibility concerns as statements made by a person because "'there is no possibility of a conscious misrepresentation.'" *State v. Schuette*, 273 Kan. 593, 596, 44 P.3d 459 (2002) (quoting *State v. Armstead*, 432 So. 2d 837, 840 [La. 1983]), *disapproved of on other grounds by State v. Schoonover*, 281 Kan. 453, 133 P.3d 48 (2006). But this rationale applies to the computer-generated records themselves. Here, the State did not admit the four weeks of call records. Instead, Slifer testified about the contents of those unadmitted records. The rationale for admitting auto-generated records does not extend to a live witness testifying to the contents of machine-generated records that are not in evidence.

Thus, Detective Slifer's testimony about the contents of the unadmitted call records was hearsay, and the district court erred by admitting it.

Having found error, we must now consider whether it was harmless. The erroneous admission of evidence is reviewed under the statutory harmless error test. Under that test, the party benefitting from the error (in this case, the State) has the burden to show there is no reasonable probability that the error will or did affect the outcome of the trial in light of the entire record. *State v. Gaona*, 293 Kan. 930, 940, 270 P.3d 1165 (2012); see also K.S.A. 2022 Supp. 60-261 (erroneous admission of evidence is harmless unless it affects the defendant's substantial rights).

We agree with the Court of Appeals that the evidentiary error was harmless. As the panel pointed out, "[t]he incriminating part of Detective Slifer's testimony was that Sinnard's phone connected to the Tonganoxie tower and then the Kansas City tower at the times P.F. said they were in Tonganoxie and at Legends in Kansas City. The unchallenged exhibits displaying Sinnard's cell phone records corroborated P.F.'s testimony on those points." *Sinnard*, 2022 WL 5287901, at *7. Slifer's testimony about Sinnard's phone activity during the weeks before and after July 25, 2017, suggested his phone activity on the day of the incident was unusual. This information would have added an additional level of corroboration to P.F.'s version of events but was insignificant compared to the inculpatory records from July 25, which were admitted without objection.

And Sinnard is incorrect that P.F.'s testimony was otherwise uncorroborated. Along with Sinnard's phone records from July 25, 2017, the State corroborated P.F.'s account with the following evidence: (1) a screenshot from P.F.'s phone of the Google Maps application showing P.F. was near the University of Kansas campus on the day and time P.F. claimed to be at Sinnard's apartment near the campus; (2) testimony that Sinnard's apartment was located on a one-way street like the one P.F. described; (3) photographs and a diagram of Sinnard's apartment which matched P.F.'s description; (4) photographs of a sex toy recovered from Sinnard's apartment which matched P.F.'s description; (5) M.F.'s testimony about what P.F. told her, which was generally consistent with P.F.'s testimony; and (6) Detective Slifer's testimony about information uncovered in his investigation which matched details P.F. had provided him, such as Sinnard using a Snapchat account with the user name "Blu" and working at a car dealership. Given P.F.'s testimony and the other evidence corroborating it, the State has met its burden to show there is no reasonable probability that Detective Slifer's hearsay affected the outcome of the trial.

35

III. *The District Court's Elements Instruction Was Not Clearly Erroneous*

Next, Sinnard challenges the jury instruction on the elements of commercial sexual exploitation of a child. At the conclusion of the evidence, the district court instructed the jury:

"The defendant is charged with commercial sexual exploitation of a child. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. The defendant hired [P.F.] by giving, offering, or agreeing to give, anything of value to any person.

"2. The defendant hired [P.F.] to engage in sexual intercourse.

"3. At the time of the act, [P.F.] was less than 18 years old. The State need not prove the defendant knew the child's age.

"4. This act occurred on or about the 25th day of July, 2017, in Douglas County, Kansas.

. . . .

"The State must prove that the defendant committed the crime knowingly. A defendant acts knowingly when the defendant is aware of the circumstances in which he was acting."

Sinnard contends the culpable mental state of "knowingly" should have been included in the first and second elements, rather than placed only in a separate paragraph below the listed elements. And he asserts the failure to include the word "knowingly" in the first and second elements is akin to omitting an essential element of the crime.

36

A. *Standard of Review and Relevant Legal Framework*

We follow a multi-step framework when addressing instructional error issues. First, we consider whether the issue was properly preserved below. Second, we decide whether the challenged instruction was legally and factually appropriate. In doing so, we exercise unlimited review of the entire record and view the evidence in the light most favorable to the requesting party. Third, upon a finding of error, we determine whether that error requires reversal. *State v. Douglas*, 313 Kan. 704, 709, 490 P.3d 34 (2021).

The first step of this framework affects the last step because an unpreserved instructional error will be considered for clear error—that is, the error may be considered harmless unless the party claiming it can firmly convince us the jury would have reached a different verdict without the error. *State v. Harris*, 310 Kan. 1026, 1034-35, 453 P.3d 1172 (2019); see also K.S.A. 2022 Supp. 22-3414(3) ("No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict . . . unless the instruction or the failure to give an instruction is clearly erroneous."). Because Sinnard raises his instructional challenge for the first time on appeal, we apply the clear error standard for reversibility.

B. *The Challenged Instructions Accurately Stated the Law and Were Not Reasonably Likely to Confuse the Jury*

Sinnard's claim of error centers on the legal appropriateness of the challenged instruction. A jury instruction is legally appropriate when it fairly and accurately states the applicable law. *State v. Broxton*, 311 Kan. 357, 361, 461 P.3d 54 (2020). Furthermore, the district court has the duty to inform the jury of every essential element of the crime charged. *State v. Richardson*, 290 Kan. 176, 181, 224 P.3d 553 (2010). This duty arises from a defendant's jury trial right as guaranteed by the state and federal

Constitutions. *State v. Butler*, 307 Kan. 831, 847, 416 P.3d 116 (2018); *State v. Brown*, 298 Kan. 1040, 1045, 318 P.3d 1005 (2014). Thus, if Sinnard is correct that the challenged instruction omits an essential element of the crime charged, the instruction would be legally erroneous.

"[A] culpable mental state is an essential element of every crime defined by" Kansas' criminal code, unless otherwise provided. K.S.A. 2022 Supp. 21-5202(a). And if a statute prescribes a culpable mental state for a crime but does not distinguish between the material elements of that crime, the culpable mental state applies to all the material elements "unless a contrary purpose plainly appears." K.S.A. 2022 Supp. 21-5202(f).

Here, Sinnard was charged with commercial sexual exploitation of a child under K.S.A. 2017 Supp. 21-6422(a)(1), which provides,

> "Commercial sexual exploitation of a child is knowingly . . . Hiring a person younger than 18 years of age by giving, or offering or agreeing to give, anything of value to any person, to engage in a manual or other bodily contact stimulation of the genitals of any person with the intent to arouse or gratify the sexual desires of the offender or another, sexual intercourse, sodomy or any unlawful sexual act."

K.S.A. 2017 Supp. 21-6422(a)(1) prescribes a culpable mental state of "knowingly" but does not distinguish between the material elements of the crime. Thus, to be convicted of that crime, the State must show that the defendant knowingly hired the victim by giving, or offering or agreeing to give, anything of value to any person; and that the defendant knowingly engaged in certain sex acts with the victim. But the State need not show the defendant knew the victim was under 18 years of age. K.S.A. 2022 Supp. 21-5204 provides that proof of a mental culpable state does not require the accused to have knowledge of the age of a minor, even when the age is a material element of the crime charged. See K.S.A. 2022 Supp. 21-5204(b).

38

Sinnard relies on *State v. Jackson*, 61 Kan. App. 2d 184, 188, 500 P.3d 1188 (2021), to argue the challenged instruction is erroneous. In *Jackson*, the Court of Appeals addressed an instructional challenge to an elements instruction for commercial sexual exploitation of a child under K.S.A. 2018 Supp. 21-6422(a)(1). The instruction in *Jackson* did not include the word "knowingly" in the first and second elements of the crime, nor did it later inform the jury that the State had to prove the defendant committed the crime knowingly. The panel recognized the given instruction mirrored PIK Crim. 4th 64.091 (2017 Supp.) but held that both the given instruction and the pattern instruction erroneously omitted the required culpable mental state. 61 Kan. App. 2d at 188.

But *Jackson* is clearly distinguishable. Unlike the instruction in *Jackson*, the instruction here informed the jury of the culpable mental state. The instruction stated: "The State must prove that the defendant committed the crime knowingly." The instruction also clarified that the State need not prove that Sinnard knew P.F. was under 18 years of age, so the jury could infer the State must prove Sinnard committed the other two elements knowingly. Thus, the panel here correctly held the instruction was legally appropriate because it "clearly instructed [the jury] that the defendant's actions had to have been done knowingly." *Sinnard*, 2022 WL 5287901, at *9.

Granted, the instruction Sinnard proposes on appeal would have also been legally appropriate. He argues the instruction should have said, "The defendant *knowingly* hired [P.F.] by giving, offering, or agreeing to give, anything of value to any person," and, "The defendant *knowingly* hired [P.F.] to engage in sexual intercourse." (Emphases added.) And in fact, after the Court of Appeals issued *Jackson*, PIK Crim. 4th 64.091 was amended to include the word "knowingly" in the first two elements of commercial sexual exploitation of a child under K.S.A. 2022 Supp. 21-6422(a)(1).

But the fact Sinnard's proposed instruction would have also been legally appropriate does not establish error. A party is not entitled to any proposed instruction merely because it is legally and factually appropriate. Thus, if a party's requested instruction is legally and factually appropriate, "we must also determine whether the instructions given by the district court, considered together as a whole, properly and fairly stated the applicable law and were not reasonably likely to mislead the jury." *State v. Shields*, 315 Kan. 814, 820, 511 P.3d 931 (2022), *cert. denied* 143 S. Ct. 616 (2023). "If so, the district court's failure to give the requested instruction does not constitute error." 315 Kan. at 820. For the reasons explained above, the instructions given properly and fairly stated the elements of commercial sexual exploitation of a child under K.S.A. 2017 Supp. 21-6422(a)(1) and these instructions would not have reasonably misled the jury.

Thus, Sinnard has failed to establish any instructional error. And because there was no instructional error, we need not proceed to the reversibility inquiry—the third step of the instructional error framework.

IV. *Did Cumulative Error Deprive Sinnard of a Fair Trial?*

Finally, Sinnard contends the cumulative effect of the alleged evidentiary errors and instructional error deprived him of a fair trial. "The effect of separate trial errors may require reversal of a defendant's conviction when the totality of the circumstances establish that the defendant was substantially prejudiced by the errors and denied a fair trial." *State v. Martinez*, 317 Kan. 151, 172, 527 P.3d 531 (2023). But Sinnard has established only one error—the admission of hearsay evidence—and that error was harmless. "A single, nonreversible error does not establish reversible cumulative error." *State v. Ballou*, 310 Kan. 591, 617, 448 P.3d 479 (2019). Thus, Sinnard is not entitled to relief on these grounds.

CONCLUSION

In sum, the district court did not abuse its discretion by invoking the crowded-docket exception under K.S.A. 2019 Supp. 22-3402(e)(4) to continue Sinnard's trial beyond the original speedy trial deadline. The district court's continuance satisfied the statutory conditions to invoke the exception. Substantial competent evidence supports the district court's crowded-docket finding. And the district court's decision was not objectively unreasonable.

Nor did the district court abuse its discretion by allowing Detective Slifer to testify as a lay witness. Slifer's testimony about cell phone connectivity was not so specialized as to bring it within the realm of expert testimony. And he did not analyze the factors affecting connectivity and apply that knowledge to determine the location of Sinnard's phone at any given time, to explain why Sinnard's phone connected to a particular tower, or to otherwise explain inconsistencies in the call records.

While the district court erred in admitting Detective Slifer's hearsay testimony regarding the contents of the four weeks of phone records not admitted into evidence, we agree with the panel's conclusion that this error was harmless.

The jury instruction on the elements of commercial sexual exploitation of a child was legally appropriate and did not omit an essential element of the offense. While Sinnard's proposed instruction was also legally appropriate, the instructions given accurately stated the law and were not reasonably likely to confuse the jury.

Finally, because we have identified only one nonreversible error, the cumulative error doctrine does not apply.

41

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

ROSEN, J., concurs in the result.